Jon A. Atabek, Esq. (SBN 269497)
  *(jatabek@atabekandco.com)*
Shirin Ehyaei, Esq. (SBN 356975)
  *(sehyaei@atabekandco.com)*
**ATABEK & CO.**
250 Newport Center Drive, Suite 306
Newport Beach, CA 92660
Telephone:  (949) 229-0953
Facsimile:   (213) 402-3413

Attorneys for Plaintiff
MATTHEW SYKEN

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SYKEN, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>TOSH BERMAN, MICHAEL TANHA, MAHDIAR KARAMOOZ, AMROU MANASEER, THE MADERA GROUP, LLC, TOCA MADERA HOLDINGS, LLC, NOBLE 33 ENTERPRISES, LLC, and DOES 1-10 inclusive,<br><br>  Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.: 2:25-CV-11622<br><br>**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: January 26, 2025<br>Time: 9:00 a.m.<br>Room: 7C |

Plaintiff Matthew Syken ("Plaintiff" or "Syken") hereby respectfully submits the following Opposition to Motion for Preliminary Injunction ("Motion") filed by Defendants and Counterclaim Plaintiffs in this action, and states as follows:



1

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Movants' blitzkrieg tactics[1] bely a thoughtless, and at times, dishonest approach to the relief they request. Defendants recently filed an application to seal the entirety of Plaintiff's Complaint.[2] That application was denied as overbroad. Before Defendants refiled their narrower (but still overbroad application), Defendants filed this motion seeking a prior restraint against Plaintiff, prohibiting Plaintiff from publicly filing or disclosing certain documents and information—even though the same could and would be achieved more narrowly and effectively by a sealing order.

Even assuming *arguendo* that the application has merit (it does not), the motion and the proposed order suffer from the same fatal defects as the original application to seal. The requested prior restraint is vague, restraining all "confidential" information Plaintiff obtained while employed with Defendants, regardless of whether it was obtained in the course and scope of his work as an attorney. The motion and proposed order does not define what such information entails.

Defendants' ambiguity glosses over the untenable many of their arguments. Defendants contend that Plaintiff's disclosure of his cancer diagnosis, and even a conversation he had with Defendants after he had been fired, are all somehow confidential and/or privileged. Defendants contend that information that Plaintiff obtained as a member of the LLCs (for example, information he gleaned from his own K-1s), is somehow subject to attorney confidentiality, even if not obtained through his role as a lawyer. The instant Motion is merely a repackaged version of Defendants' unsuccessful application to seal the Complaint—a vague, rushed, and unsupported mess of "evidence" flung together, more to disparage the character of Plaintiff than to meet the exceedingly high bar of imposing a prior restraint on a litigant.

---

[1] The Docket now exceeds 40 entries in thirty days.

[2] Plaintiff has since filed a partially redacted First Amended Complaint ("FAC"). The FAC removes Plaintiff's sole federal claim. Unless Defendants agree to remand voluntarily, Plaintiff intends to file a motion for remand.



**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

## II. FACTUAL BACKGROUND

Syken's relationship to TMG and Noble 33 is multi-facted; he is a member of both entities and a co-Defendant in litigation with them. Declaration of Matthew Syken ("Syken Decl."), ¶¶ 3, 9. Syken also started out as general counsel of both TMG and Noble 33, but later changed roles at TMG to become its President and transition legal work to outside counsel, though he remained part-time general counsel to Noble 33. Id., ¶¶ 4-8. The board of directors of TMG appointed Plaintiff to that role as a condition of certain other agreements with TMG. Id., ¶ 4. Syken was later terminated in September, 2025, leading to the instant litigation.

The information alleged in the pleadings by Plaintiff is derived not from confidential information Plaintiff obtained through his work as a lawyer, but through his role as a member, co-defendant, and President of TMG; indeed, Syken omitted information he knew to be privileged or confidential from his pleadings. Id., ¶¶ 3, 6, 9-11. For instance, the InKind contract at issue is not, by its own language, confidential. Id., ¶ 12. The plain language omits the contract itself from the definition of "confidential information" contained therein. Id. Indeed, that contract has been exchanged in currently pending litigation in Nevada and has been the subject of non-confidential deposition testimony by declarant Tanha. Id. To date, Defendants have yet to refute these facts. Id.

Moreover, Plaintiff made clear to Defendants that he would not provide legal advice to them regarding InKind. Id., ¶¶ 13-14. Indeed, such work was handled by outside counsel at Duane Morris and Greenberg Traurig. Id., ¶ 8. Indeed, TMG's relationship with InKind is not confidential at all—rather, it is promoted on Noble 33's website. Id., ¶ 15.

Syken's knowledge of the seemingly cash-flush financial status of Noble 33 was not obtained through any legal work he performed, but rather because of the substantial size of the distributions Syken received as a *member* of the LLC. Id., ¶ 18. Similarly, Syken's knowledge of the poor financial health of TMG were not derived



3

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

from any legal work he performed for TMG or Noble 33. Rather, it arose from bounced checks and subsequent investigation into why the company's coffers ran empty while Noble 33's seemingly overflowed. Id., ¶¶ 16-18. This is what triggered Plaintiff to begin reviewing the TMG's bank statements—not any legal work performed for Noble 33. Id., ¶ 19.

Notably, much of the background relating to Defendants' dealings with their former private equity partner, Breakwater, is public record from the Nevada proceedings. Id., ¶ 8, Ex. 1. Similarly, Scott Jackson, a litigant referenced in the moving papers, filed substantially similar claims against Defendants long before Plaintiff filed his suit. Id., ¶ 23. And a large chunk of the information that Defendants claim is confidential is communications that took place between Syken on the one hand, and Tanha and Berman on the other, after they had already terminated Syken's employment (and thus any expectation of confidentiality or privilege). Id., ¶¶ 25-30.

Simply put, Plaintiff understands his ethical obligations under CRPC Rule 1.9, and specifically tailored his allegations to exclude any such information he obtained that would be subject to that rule. Id., ¶ 33. In the event the Court decides to ultimately seal portions of the pleadings, Plaintiff intends to comply with any such sealing order. Id., ¶ 34.

Plaintiff believes Defendants' unfounded and unsubstantiated claims of embezzlement and extortion against him are without merit, and frankly irrelevant to this Motion. Nonetheless, Plaintiff denies the allegations. Id., ¶¶ 31-32, 35-37.

### III.  LEGAL STANDARD APPLICABLE TO PRIOR RESTRAINTS

Before even evaluating whether Defendants have met their burden of establishing an entitlement to an injunction, they must first justify the imposition of a prior restraint:

> "The right to free speech is ... one of the cornerstones of our society," and is protected under the First Amendment of the United States Constitution and under an "even broader" provision of the California Constitution. (*Hurvitz*

4
**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

> *v. Hoefflin* (2000) 84 Cal.App.4th 1232, 1241, 101 Cal.Rptr.2d 558; see Cal. Const., art. I, § 2, subd. (a).) An injunction that forbids a citizen from speaking in advance of the time the communication is to occur is known as a "prior restraint." (*DVD Copy, supra,* 31 Cal.4th at p. 886, 4 Cal.Rptr.3d 69, 75 P.3d 1; *Hurvitz v. Hoefflin, supra,* 84 Cal.App.4th at p. 1241, 101 Cal.Rptr.2d 558.) A prior restraint is " 'the most serious and the least tolerable infringement on First Amendment rights.' " (*DVD Copy, supra,* 31 Cal.4th at p. 886, 4 Cal.Rptr.3d 69, 75 P.3d 1; *Near v. Minnesota* (1931) 283 U.S. 697, 713, 51 S.Ct. 625, 75 L.Ed. 1357.) Prior restraints are highly disfavored and presumptively violate the First Amendment. (*Maggi v. Superior Court* (2004) 119 Cal.App.4th 1218, 1225, 15 Cal.Rptr.3d 161; *Hurvitz v. Hoefflin, supra,* 84 Cal.App.4th at p. 1241, 101 Cal.Rptr.2d 558.) This is true even when the speech is expected to be of the type that is not constitutionally protected. (See *Near v. Minnesota, supra,* 283 U.S. at pp. 704–705, 51 S.Ct. 625 [rejecting restraint on publication of any periodical containing "malicious, scandalous and defamatory" matter].)
>
> To establish a valid prior restraint under the federal Constitution, a proponent has a heavy burden to show the countervailing interest is compelling, the prior restraint is necessary and would be effective in promoting this interest, and less extreme measures are unavailable. (See *Hobbs v. County of Westchester* (2d Cir.2005) 397 F.3d 133, 149; see also *Nebraska Press Assn. v. Stuart* (1976) 427 U.S. 539, 562–568, 96 S.Ct. 2791, 49 L.Ed.2d 683.) Further, any permissible order "must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order...." (*Carroll v. Princess Anne* (1968) 393 U.S. 175, 183–184, 89 S.Ct. 347, 21 L.Ed.2d 325.)

*Evans v. Evans*, 162 Cal.App.4th 1157, 1166–1167 (2008).

Indeed, the requirement that an injunction be both definite and narrow in scope are codified in Fed R. Civ. P., Rule 65(d). See, *Union Pac. R. Co. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000).



5
**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

## IV. ARGUMENT

### A. Even If the Motion Had Merit (It Does Not), the Motion Fails to Identify The Requested Relief with Adequate Specificity—This Motion is Nothing More Than the Sealing Motion Repackaged.

As discussed in more detail below, Plaintiff fails to establish a likelihood of prevailing on the merits of their claim. The instant counterclaim is an obvious SLAPP suit designed to intimidate Plaintiff and his counsel through bullying tactics. But even assuming the counterclaim has merit (it does not), the Motion nonetheless fails.

> Federal Rule of Civil Procedure 65 requires that an injunction "be specific in terms" and "describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Fed.R.Civ.P. 65(d). The Supreme Court has explained that "one basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 444, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); *see also Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974) ("[T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.").

*Union Pac. R. Co. v. Mower*, *supra,* 219 F.3d at 1077.

In *Union Pac. R. Co. v. Mower*, the Ninth Circuit struck down an injunction prohibiting the disclosure of, "any information or communication of a confidential nature, including the information and communications described in the accompanying findings of fact and conclusions of law, that he acquired, learned, or helped to generate during his employment by [UP] or while he was a consultant for plaintiff." *Id.*, at 1073, 1077. The Ninth Circuit determined such language "does not even come close



6

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

to satisfying Rule 65's specificity requirements." *Id.*, at 1077.

The injunction language proposed by Defendants fares no better. The proposed injunction states, "Except as otherwise provided herein, Counterclaim Defendant Matthew Syken shall not use or disclose, to the public or any third party, any Confidential Information concerning or relating to Counterclaim Plaintiffs that he learned or received as Counterclaim Plaintiffs' attorney." Dkt. 21-26. It goes on to define "Confidential Information" to mean, "information that is: (a) protected by the attorney-client privilege under California Evidence Code § 950 et seq.; (b) protected as attorney work product under California Code of Civil Procedure § 2018.030; (c) subject to the duty of confidentiality under California Business and Professions Code § 6068(e)(1); (d) protected by the confidentiality provisions in Mr. Syken's Employment Agreement (Exhibit A to the Karmooz Declaration, Section 17(a)-(c)); (e) non-public information of or relating to Counterclaim Plaintiffs that Syken learned during his work as Counterclaim Plaintiffs' attorney; and/or (f) any other non-public information that Syken learned during his work as Counterclaim Plaintiffs' attorney that could cause harm, embarrassment, damage, or otherwise negatively affect Counterclaim Plaintiffs if disclosed or used." Id.

This language is problematic, both in its ambiguity, and in its disregard for applicable law. As an initial matter, the order does not clarify whether any of the specific information that Defendants argue are confidential—for instance, distribution information gleaned from K-1s, the identity of other members of the LLCs, or post-termination communications—are subject to the requested injunction. The injunction, as phrased, would leave Syken to guess whether he would be violating the injunction.

This is further problematic, because such information is not confidential under applicable law. CRPC Rule 1.9 and Business and Professions Code § 6068(e)(1) do not apply to all confidential information obtained while an attorney/client relationship existed. Rather, it only applies to confidential information obtained *as a result* of the attorney/client relationship. Indeed, by its plain language, there must be a causal nexus

7

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

between the existence of the attorney/client relationship and obtaining said confidential information. Thus, as phrased, the proposed order would seemingly cover large swaths of information that would, on their face, not be subject to any such restrictions or duty of confidentiality.

Even going beyond that, Defendants appear to ask this Court for an order they hope to apply to communications that have no possible bearing any right of confidentiality, including communications that took place between Plaintiff and Defendants after Defendants had already terminated Plaintiff. The lack of justification or explanation for such a restraint, by itself, is enough to deny the overbroad prior restraint sought by Defendants.

**B.  The Sealing Motion is More Than Adequate to Achieve the Same Goals.**

Defendants fail to explain why adequate results cannot be achieved through a sealing order. Here, the allegation is that Plaintiff has improperly filed matters publicly that should be sealed. Since then, Plaintiff has cooperated with Defendants in filing matters under seal, both in the California Superior Court, and in these proceedings. Indeed, Plaintiff did not oppose the provisional sealing of the Complaint in California (though Plaintiff did oppose Defendants' noticed motion in light of the overbroad nature of the sealing order sought). Plaintiff has also filed their First Amended Complaint under seal, even including the overbroad redactions requested by Defendants (without prejudice to Plaintiff's right to ask this Court to unseal/un-redact the overbroad redactions requested).

Again, as noted above, it is the movant's burden to establish that lesser relief is inadequate. Defendants have failed to do so here, necessitating denial of their motion.

**C.  Defendants Also Fail to Establish Either a Likelihood of Prevailing on the Merits or Irreparable Harm.**

As an initial matter, movants have failed to establish a likelihood of prevailing on the merits. Defendants must first establish that the information at issue is, in fact



8
**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

confidential. But as noted above, the InKind agreement is not confidential by its own plain terms. And the InKind, Management, and Licensing agreements have all been disclosed extensively in the Nevada litigation—a fact that movants have not and cannot deny. Given the fact that such documents have already been publicly available in other proceedings, Defendants also cannot harm attributable to Plaintiff.

Indeed, even light scrutiny of Defendants' claimed harm makes clear they have suffered none. Defendants claim they were harmed because Breakwater seized on Syken's allegations to seek the imposition of a receiver. What Defendants fail to note is that the application was a *renewed* application—Breakwater had made the same request before. And regardless, the application was denied. Thus, there was no harm.

As to the Scott Jackson litigation, Defendants' own submission concedes that settlement discussions broke off *before* Plaintiff filed anything publicly. There is no evidence or implication that Mr. Jackson is blessed with clairvoyance allowing him to predict the filing of public pleadings before they are filed.

Similarly, Defendants' hearsay statement from their landlord, offered not from a sworn statement by that landlord but through Mr. Tanha, references matters that are not the subject of Plaintiff's lawsuit, such as Defendants losing their "funding." Such allegations appear nowhere in Plaintiff's pleadings. Moreover, Defendants' litigiousness is well documented. Indeed, Defendants attach three such examples of lawsuits (not even including the Breakwater litigation) to their moving papers.

Defendants also fail to present evidence of likely future harm. As movants have rightly noted in other filings, Plaintiff has been cooperating with Defendants to meet and confer regarding potentially appropriate redactions. Indeed, the FAC, and Defendants' subsequent application to file its notice of removal under seal. Dkt. No. 38, 38-1. Contrary to counsel Minnick's attestations, Plaintiff has attempted to cooperate with permitting appropriately narrow sealing orders at every stage (including drafting a stipulation to seal documents at the state court level, and meeting and conferring at the federal level).

### D. Defendants' Embezzlement Evidence is Irrelevant, and Seems Calculated to Merely Badmouth Plaintiff.

Defendants spend a significant portion of their moving papers accusing Plaintiff of embezzlement. Such matters are completely irrelevant to the question of whether the information at issue is confidential, whether there is any risk of harm, or whether Defendants have met their high burden of justifying a prior restraint. Indeed, it appears such matters have been presented purely to attempt to either prejudice the Court, or to create a public counternarrative casting Plaintiff as "bad," or untrustworthy. Such matters should be ignored by the Court for the purpose of considering this Motion.

## V. CONCLUSION

The Motion is not tethered to reality. It seeks to enjoin Plaintiff from seemingly anything Defendants deem "confidential." In the past, Defendants have contended that Plaintiff's cancer diagnosis, and his communications with Defendants *after he was terminated* are all confidential. The Motion does so on a record that fails to establish that any of the information at issue is, in fact, confidential, let alone that it implicates an overriding policy concern that would justify the imposition of a prior restraint, or that adequate relief cannot be achieved through sealing orders. For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion.

**ATABEK & CO.**

Dated: January 6, 2026        By: __/s/ Jon A. Atabek_____

Jon A. Atabek, Esq.
Shirin Ehyaei, Esq.
Attorneys for Plaintiff
MATTHEW SYKEN



10
**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



PROOF OF SERVICE